**Case No. 13-4082**

## UNITED STATES C0URT OF APPEALS

## FOR THE TENTH CIRCUIT

| | |
|---|---|
| WALTER L. WAGNER, | ) |
| | ) Case No. 13-4082 |
| Appellant and Plaintiff | ) |
| | ) (Dist No. 2:11cv00784; Utah) |
| vs. | ) |
| | ) **APPEAL OPENING BRIEF** |
| PRESTON MICHIE, KENNETH | ) |
| FRANCIK, LESLIE COBOS, MARK | ) (Appeal from decision of US |
| ROBINSON, ANNETTE EMERSON | ) District Judge Robert J. Shelby) |
| STEVE BRYANT, WORLD BOTANICAL ) | |
| GARDENS, INC. (WBGI), | ) (Oral Argument Not Requested) |
| | ) |
| Appellees and Defendants | ) |
| | ) |

WALTER L. WAGNER, Appellant/Plaintiff
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

## JURISDICTIONAL STATEMENT

Jurisdiction is present due to diversity of citizenship. Plaintiff/appellant is a citizen and resident of Utah during period of time of the actions complained of herein. WBGI is a Nevada corporation with its principal place of business. Individual defendants are citizens of California, Oregon, Washington and Minnesota. The damages sought exceed the jurisdictional limit of this Court.

## TABLE OF CONTENTS

I    General Introduction    -    -    -    -    -    -    -    -    - 2

II    History of WBGI and Litigations    -    -    -    -    -    -    - 3

III    Frauds of WBGI Litigations    -    -    -    -    -    -    -    - 7

     A    Hawaii Fraud    -    -    -    -    -    -    -    -    - 7

     B    Nevada Fraud    -    -    -    -    -    -    -    -    - 17

IV    Issues on Appeal-    -    -    -    -    -    -    -    - 20

     A    Does Issue Preclusion Allow Use of Judgment Documents    -    - 20
         Obtained By Criminal Fraud and Without An Actual Trial?

     B    Does Issue Preclusion Allow Use of Judgment Documents    -    - 27
         Obtained By Civil Fraud and Without a Fair Trial?

     C    Are the Issues Herein Substantially Different Than in Prior    -    - 28
         Cases So As to Render Issue Preclusion Inapplicable?

V    Conclusion -    -    -    -    -    -    -    -    -    - 29

## TABLE OF CASES AND AUTHORITIES

(None cited herein specifically; case citations saved for Closing Brief)8

## APPEAL OPENING BRIEF

### Statement of the Case

I

### General Introduction

Plaintiff/appellant Wagner seeks, by way of this action, damages for defamation from both WBGI (currently stayed due to its pending bankruptcy) and as against individual members of WBGI's board of directors.  Those acts of defamation include a) lying by defendant/appellee Preston Michie who, along with his cohorts in WBGI, stole approximately $200,000 from a dedicated Visitor Center account, and when a WBGI shareholder wrote in to ask what had happened to the money, in order to cover their own theft of the money,  Michie falsely claimed that the money was stolen by plaintiff/appellant Wagner; b) chronic repeat lying by defendant appellee Kenneth Francik who repeatedly lied to news media, shareholders, board members, attorneys and others for the purpose of falsely arresting plaintiff and falsely stigmatizing a judge to deny plaintiff/appellant a fair trial in an action fraudulently initiated against Wagner by defendant Francik et al., resulting in a deprivation of an actual trial and a false 'judgment' against Wagner for which he seeks damages at least equal to the

value of that 'judgment'; c) falsely publishing to WBGI shareholders and others that appellant and his wife were guilty of criminal activity in order to sustain themselves as WBGI officers; and d) other defamatory acts.

This case presents the unusual situation of the trial court filings consisting of numerous sworn affidavits from several witnesses supporting plaintiff/appellant Wagner, and zero affidavits contesting any of the extensive facts set forth by Wagner, including facts detailing the fraudulent acquisition of "judgment" documents, and is ripe for a directed judgment against defendants/appellees.    Instead, appellees rely entirely on two "judgment" documents to assert 'issue preclusion' as against Wagner.  Those documents are invalid, as detailed herein.  Likewise, they are also inapplicable, as they pertain to issues that are not to be litigated herein or otherwise do not support issue preclusion.

II

## History of WBGI and Litigations

1.    Appellant/Plaintiff Walter L. Wagner (Wagner) founded a botanical garden in Hawaii in 1994, which was incorporated in 1995 as World Botanical Gardens, Inc. (WBGI).  For ten years (1995 to 2004) he worked at developing WBGI

3

without collecting his salary, accumulating Promissory Notes as owed back-pay instead, while developing a beautiful tourist attraction from scratch on former sugar-cane fields located on the Big Island (Island of Hawaii). For that first decade, he chaired the Board of Directors, while acquiring 300 acres of land for the botanical garden, taking the company from a valuation of $0.0 to a valuation of approximately $10,000,000 in which he held a 16.6667% ownership interest.

(see http://en.wikipedia.org/wiki/World_Botanical_Gardens)

2.    In 2004 a new corporate board headed by defendant Kenneth Francik replaced the original corporate board headed by Wagner. In 2004 that new board was appointed for a limited duration by the Wagner board, chaired by Kenneth Francik, with elections to be held in 2004 for the 2005 term. In 2005, several WBGI shareholders, headed by Ron Tolman, challenged the legality of the Francik board's illegal continuation beyond 2004 without an election, which Francik board had only received 10% of the vote of the issued shares in 2004, whereas the Tolman group controlled 20% of the issued shares. The Francik board claimed they could vote the non-voting shares and non-issued shares (which was prohibited by the By-Laws), and thus they claimed they had 80% of the vote, not 10% as was actually the case. Francik and Tolman entered into a written agreement not to engage in litigation with the limited WBGI funds, and to

4

settle the matter via mediation instead. As a result of the agreement, control of

the WBGI funds amassed by Wagner (approximately $600,000) was returned to

the interim Francik board circa April 2005, to be used for routine expenses only

with non-routine expenses to be determined by consensus agreement between

Tolman and Francik. A few days later, the Francik board voted to initiate

litigation against the Tolman group members anyway, notwithstanding the prior

written agreement not to litigate on which the ink had not yet dried. In June

2005, the Francik board filed their suit entitled *WBGI v. Wagner* in the state of

Hawaii ("*Second Hawaii Suit*") in which the ten members of the Tolman group

were named as defendants. This and subsequent suits were illegally funded

entirely by WBGI funds amassed by Wagner, including $200,000 stolen from a

dedicated Visitor Center Account, precluding WBGI from building a long-

anticipated Visitor Center. A few weeks later, the Francik board filed an

identical suit entitled *WBGI v. Wagner* in the state of Nevada ("*Nevada Suit*"),

again naming the ten members of the Tolman group as defendants.

3.      Both suits sought a) a directive that the Francik board was properly

constituted, and b) monetary claims against the individuals of the Tolman group.

These bogus monetary claims primarily set forth various false allegations of

alleged "misappropriations" by the members of the Wagner board during its ten-

years of leadership (1995-2004), as well as against some of Wagner's close associates who were also part of the Tolman group.

4.      Additionally, a previous default judgment, obtained during the Wagner board tenancy for Wagner's back-pay, had been entered in mid-2004 entitled *Wagner v. WBGI* ("*First Hawaii Suit*").  In 2006 the Francik board petitioned for re-opening of that closed suit and initiated litigation thereon, seeking to vacate the default judgment.  Subsequently, that suit went up to the Hawaii Court of Appeals circa 2008, and was returned to the trial court circa 2012 for further proceedings on Wagner's *quantum meruit* claim of back-pay owed to Wagner, rather than on the explicit Promissory Note claims that had also been included. That suit is currently awaiting trial on the dollar amount of the claim (approximately $750,000 before ten years of applied interest, plus costs), but is presently stayed pending the outcome of WBGI's recently filed bankruptcy.

5.      After 2005, the Francik board began liquidating the WBGI land assets to pay money to themselves and close associates, as well as fund their litigations they initiated as a 'cover' for their theft of those monies.  This left WBGI with only 20 acres in 2007, out of the original 300 acres in 2004. The Francik board also neglected to maintain the unfinished garden, and gate-receipt revenues began plummeting notwithstanding a doubling of admission price between 2004

6

and 2008. In 2012 the Francik board voted to file for bankruptcy, and in April 2013 they sought liquidation of its assets (though filed as a 'reorganization' in which they seek to sell the remaining 20-acre asset to themselves at greatly reduced price, then lease it back to the 'shell corporation' which would be asset-less). That bankruptcy action is currently pending in Reno, Nevada, Case No. 13-50833, with a pending request by one of the original WBGI co-founders (Mr. Cal Andrus) to serve as a Trustee to try to revitalize the company, instead of liquidating the remaining assets as requested by the Francik board.

III

## FRAUDS OF WBGI LITIGATIONS

### A.   HAWAII FRAUD

6.   The WBGI litigations that it initiated are not ordinary litigations, but instead involve extreme frauds on the part of WBGI agents in support of their litigations. This is highly relevant, in that WBGI and the other named defendants herein, all of whom were WBGI board members on the Francik board, now seek to rely on those results, in part, to support alleged "issue preclusion" based upon their fraudulently obtained judgments in two of those three litigations. However, as shown below, those issues were never actually litigated and issue preclusion is

7

inapplicable (and even if it were applicable, is irrelevant to the claims against the individual defendants named herein which are entirely different issues).

7.    In *Wagner v. WBGI* ("*First Hawaii Case*"), the Francik board falsely claimed that Wagner was not eligible for pay because he had been a WBGI officer or board member, and that he could not also contract with WBGI as an employee. On appeal, while the appellate court apparently believed there was a problem with having promissory notes of set contract amounts as determined by the Wagner board, and disallowed those promissory notes, they agreed with Wagner that he was entitled to back-pay for work performed, based on its *quantum meruit* value. WBGI's Francik board has made no effort whatsoever to pay anything to Wagner for the ten years worth of work he did in building the botanical garden, instead using the money that Wagner is owed to fund their fraudulent litigations, spending far more in litigation than Wagner was owed. That case is returned from the appellate court to the trial court for determination of the amount owed, but presently stayed pending WBGI's bankruptcy.

8.    In *WBGI v. Wagner* ("*Second Hawaii Case*"), the litigation took a far more ominous turn. Since the litigation was identical with the concurrent Nevada suit ("*Nevada Case*"), the Tolman group in early 2006 sought to have either the Nevada suit, or the Hawaii suit, dismissed as a violation of general legal

principles that identical litigation should not proceed in two forums, but rather only one.    Consequently, it was stipulated between WBGI's Francik representative and the Tolman group defendants that the Hawaii case ("*Second Hawaii Case*") would litigate solely the monetary claims, and the identical Nevada suit ("*Nevada Case*") would litigate solely the competing governance claims of the Tolman group and the Francik board.  By that means, fashioned by the Hawaii judge in response to Wagner's motion heard in 2006, the cases were no longer identical as the Nevada case sought solely a directive as to which of two boards was properly in governance of WBGI and no monetary claims, and the Hawaii case sought solely monetary claims and no governance dispute claims.    While the Nevada case was heard in 2007, the Hawaii case proceeded concurrently and went to "trial" in 2008.

9.    The Hawaii "trial" ("*Second Hawaii Suit*") involved criminal felony activity on the part of defendant Francik, who also colluded with the trial court judge in that activity to preclude an actual trial on the merits, as detailed in numerous uncontroverted documents[1] filed herein**.**  This arose as follows:

_____

[1] See **Document 3**; **Document 14**, pages 7-10; **Document 24**, pages 4-12; D**ocument 33**, pages 6-11 and 24-40; **Document 45**, pages 5-21; and **Document 54,** pages 8-10

a)    In February 2008 defendant Francik appeared before a Hilo grand jury and gave perjured testimony.    He lied and falsely claimed that Linda Wagner, WBGI's secretary and treasurer between 1995 and September 2004, had actually been removed as a corporate officer in 2003 and replaced by defendant Annette Emerson at that time, not in 2004 as actually was the case. He falsely claimed that Linda Wagner's signing of the last in a series of nine promissory notes, signed January 1, 2004 was therefore a fraud on WBGI.

b)    He provided no documentation for that absurd claim, yet based on the strength of solely his own perjured testimony, a false indictment naming Linda Wagner and Walter Wagner (who had also signed that promissory note) was issued.    All documentation shows contrary to his fraudulent assertions, including Secretary of State records for Nevada showing Linda Wagner as the appropriate corporate officer, Linda Wagner being replaced as a corporate officer by Annette Emerson in September 2004, WBGI's attorney writing and advising in May 2004 as to the identity of the corporate officers, and numerous other writings all confirming that Linda Wagner was indeed a corporate officer when she signed corporate documents.    Likewise, numerous sworn affidavits all attest to the fact that Linda Wagner was a WBGI corporate officer when signing

10

WBGI corporate documents, and that defendant Francik knowingly lied about it.[2] Consequently, those false criminal charges were dismissed (circa 2010).

c)    Circa March 2008 (about five weeks after Francik's perjury to the grand jury) Linda Wagner and Walter Wagner both personally appeared before the trial court judge in *WBGI v. Wagner* ("*Second Hawaii Case*").    This appearance was the last pre-trial hearing in that case.    Five weeks earlier, the day after issuance of the false indictment, that same judge had issued warrants for the arrest of both Wagners, but had made no effort to have them arrested. At that last pre-trial hearing, he made no reference to the fact that he was then holding warrants for their arrest (and the Wagners were unaware of those warrants), nor did he make any effort to arrest either of the Wagners.    Instead, he directed them to appear at the then forth-coming trial of *WBGI v. Wagner* ("*Second Hawaii Case*"), to be held about ten days later in early April, 2008.

---

[2] See for example the sworn affidavit of Dan Perkins filed herein, which has never been contested, filed as **Document 3**, filed 11/07/11 wherein he details the vote that was taken on September 2, 2004 to replace the Wagners with defendants Francik and Emerson as the replacement corporate officers.  Perkins goes into great detail about how Francik knew his testimony before that grand jury was a complete lie, detailed on paragraphs 3 through 10.

11

(d)     In April 2008, the Wagners appeared at what was supposed to be a

trial in *WBGI v. Wagner* ("*Second Hawaii Case*").[3]  Linda Wagner had been

named as Walter Wagner's witness, and Walter Wagner had been named as

Linda Wagner's witness, among the numerous witnesses listed in advance of

the trial.    Defendant/appellee Francik was the first witness called.    During

Francik's cross-examination by plaintiff/appellant Wagner, the trial court judge

directed the entry of Sheriffs into his courtroom to effect the arrest of Linda

Wagner using the warrant he had been holding for six weeks.  She was cuffed

and removed from the courtroom.  The trial court judge had exited the courtroom

through his back-door simultaneously, and there was no opportunity to orally

request a continuance.  This was done in collusion with his judge *pro tempore*,

Thomas Yeh, who also served as WBGI/Francik's attorney and was present in

the courtroom, and in collusion with defendant/appellee Francik who was on the

witness stand.   Uncertain as to what other illegal activities that highly-biased

judge might undertake, plaintiff/appellant herein Wagner left the courtroom (as

_____

[3] This description of illegal arrest at "trial" is more fully detailed in numerous sworn
affidavits.  For example; **Document 33**, Sworn Affidavit of Walter L. Wagner, pages 26
to 30; or **Document 24,** paragraphs 11 through 14, again detailing the false arrest, and
Linda Wagner's importance as a critical key witness.  It has been detailed in the other
related cases, such as *People v. Wagners*, Hawaii, which was dismissed as unfounded.

12

his chief witness, Linda Wagner who was the WBGI secretary and treasurer during the times in question, was no longer available due to clearly illegal means) and arranged for Linda Wagner's high bail to be posted. Following her release in mid-afternoon later that day, Wagner returned to the courtroom only to find the "trial" had been concluded only a few minutes earlier without testimony from either of the Wagners or their having an opportunity to cross-examine any witnesses (save for the partial cross-examination of Francik).

10. The motion for a new trial based on the above scenario was denied, and the judge issued the "judgment" that defendants/appellees now seek to use to assert "issue preclusion" based on their false and fraudulent claim that the Wagner's actually engaged in the reprehensible wrongdoings set forth in that judgment document, notwithstanding the fraud in issuance of that document, and the fraud of Francik and Emerson who gave perjured testimony at that alleged "trial" giving rise to the false allegations of the "judgment" document.

11. Likewise, no appeal was allowed. This might seem strange, but it is true. An appeal was attempted, however. Following issuance of the final "judgment", the requisite *Notice of Appeal* was timely filed. That filing was followed by the requisite timely filed *Jurisdictional Statement* detailing the basis for the appeal (setting forth the facts above). Following the *Jurisdictional Statement*, the

13

appellee (defendant/appellee herein WBGI) moved for dismissal of the appeal, claiming that there was not a valid basis for an appeal set forth in the *Jurisdictional Statement*, etc.  That appellate motion by WBGI was denied by the appellate court asserting that it was a proper appeal, allowing the appellate case to move forward.  The case was then fully briefed, with Opening and Closing briefs by the Wagners, and a Reply brief between those two filed by WBGI.

12.    One year after the appeal was filed that appellate court in Hawaii took an unusual action, and requested preparation of transcripts of all the numerous lower-court proceedings.  Neither party to the appeal had requested such (instead designating the entire written record as the record on appeal) due to the expense.  Now the expense was being borne by the appellate court instead.  Since the lower-court proceedings fully supported the basis for the appeal, it was expected that the appellate court would send the case back for a new trial.

13.    One year later, however, two years after the appeal was filed, the appellate court took another unusual action.    All three panel members voluntarily recused themselves, without either appellant or appellee asking for such recusal, apparently not wanting to be in a position to judge the criminal collusion of a sitting trial court judge with his judge pro tempore serving as the

WBGI attorney, and thus they recused themselves and instead asked for the empanelment of another appellate panel.

14.    A few weeks thereafter, another appellate panel was convened, and a few days thereafter it dismissed the appeal without entering a decision, claiming they could not understand what was being complained about.   The elective petition for certiorari to the Hawaii supreme court was denied a hearing by that court.   Consequently, there was no actual trial, and no actual appeal decision.

15.    It is that "judgment" document, obtained without an actual trial or litigation of the facts, that defendant/appellee claims should serve to preclude plaintiff Wagner from complaining of the subsequent actions of WBGI's agents, defendants/appellees herein, as they are falsely claimed to be protected pursuant to the doctrine of "issue preclusion" with their claim that the issues of the instant action were previously litigated in the Hawaii action ("Second Hawaii Case") on their false claim that the Wagners received a fair trial, even if they were not present due to no fault of their own.

16.    The newly-appointed trial court judge below apparently agreed with that assertion, stating in his decision document:

15

"*The court finds that Mr. Wagner's argument is nonsensical. There is no evidence that Mr. Wagner himself was arrested or was prevented from appearing at the Second Hawaii trial. He cannot complain that he did not have a full and fair opportunity to litigate when he voluntarily chose not to appear.*"

17.    What is nonsensical about his 'argument' is that that was not the thrust of

Wagner's argument.    He apparently assumed that Linda Wagner was there to

give moral support only, and was not a critical key witness.    He ignores

Wagner's uncontroverted sworn affidavit[4]  regarding Linda Wagner which reads:

"…*Linda Wagner was not simply accompanying me to the courtroom to hold my hand. She was a critical key witness, who had been listed in advance as a witness, as well as a party.   She had explicit testimony to give on the fraudulent assertions of "misappropriation" of WBGI funds, because she was the WBGI bookkeeper, accountant, and corporate Secretary and Treasurer during the times of question (1995-2003) regarding the advisability of those appropriations.   Her testimony was key to providing a complete picture and it would have been devastating indeed to defendant herein Francik.   Her testimony would have shown that all of the fraudulent allegations of "misappropriation" were in fact that – fraudulent; as the appropriations were proper, necessary, and beneficial to WBGI, and did not enrich me personally.   Rather, I continued to loan money to WBGI year after year, and I am presently the single largest creditor of WBGI because of those loans.*"

_____

[4] **Document 24**, filed 12/02/11, pages 10-11

16

Elsewhere in the documents Linda Wagner's extensive qualifications are detailed, including her serving as a mathematics educator for many years, both in Hawaii and in Utah, where she is currently working in education.

18.    Consequently, the doctrine of issue preclusion cannot be asserted based upon a "judgment" document which does not actually represent any actual litigation of facts, and instead is a pure hoax on this Court, as it is a hoax on the trial court below and the Hawaii court, as neither of the Wagners actually engaged in any of the alleged reprehensible conducts asserted in that phony 'judgment' document.

B.    NEVADA FRAUD

19.    In addition to the criminal fraud (lying under oath to obtain a warrant, then collusion with the trial court to exercise the warrant at the "trial" instead of earlier) used to prevent an actual trial in the Hawaii *WBGI v. Wagner* case ("*Second Hawaii Case*"), defendants/appellees also used fraud to prevent a fair trial in the Nevada *WBGI v. Wagner* case.

17

20.  As mentioned before and detailed in numerous <u>uncontested</u> sworn affidavits[5], the Nevada case was agreed in advance to litigate solely the Francik board claim of legitimacy to governance of WBGI, and to not litigate any of the monetary claims being falsely promulgated which were to be litigated in the then forthcoming Hawaii trial.  Consequently, the defendants therein (Ron Tolman, Dan Perkins, Walter Wagner, et al.) prepared solely for litigation of that governance claim, bringing in witnesses pertaining thereto, and not flying in witnesses who could give testimony on the falsely alleged monetary claims.

21.  Witnesses who were prepared to give testimony on WBGI's false monetary claims included Linda Wagner, WBGI's secretary and treasurer from 1995 to 2004, and David Adams, WBGI's office manager from circa 2003 to 2005.  Both were prepared to give explicit testimony that none of the monetary claims being advanced by Francik's group had any validity of any form, and were in fact frauds being worked by the Francik group.

22.  However, when it was agreed between the parties that only the governance claim, and none of the monetary claims, were to be presented in Nevada, those two witnesses, who were not witnesses pertaining to the Tolman

---

[5] see **Document 14**, pages 4-6; **Document 33**,pages 9-24; **Document 54**, page 7

groups proper governance claim, cancelled plans to fly to Hawaii as they were not involved in the Tolman group/Francik board governance dispute, and had not evidence or testimony to present pertaining to that.

23.    At the governance 'trial', however, the Francik group began presenting false claims pertaining to one of their monetary claims to be litigated in Hawaii, the false allegation that plaintiff/appellant herein had been selling corporate treasury shares and embezzling the money.  Not only was that claim false, it had nothing to do with the fact that the Francik board had illegally held over its control of the WBGI finances, and that the Tolman group had been properly appointed thereafter as a replacement board.

24.    Both Linda Wagner and David Adams had explicit testimony to give on that false and fraudulent monetary claim, but were unable to because they had been tricked/deceived into believing that the Francik group would not present such monetary claims.  Rather, it ended up being Francik's false testimony as the evidence in support of that claim and a disgruntled shareholder who had been coached in advance by Francik's lies, versus Wagner's assertion that Francik was lying.  Consequently, the court was confused, and granted a monetary award on the fraudulent claim that Wagner had sold WBGI treasury shares and embezzled the money, when in actuality he had sold some of his

own shares, and spent the money on the continuing development of WBGI

property.    The absent witnesses would have readily clarified the court's

confusion, as they had explicit testimony to corroborate Wagner's testimony, but

were fraudulently deceived into not appearing.    Because Nevada has no

appellate court and no right of appeal, only questions pertaining to errors of law

by the trial court could be entertained by that state's supreme court, and the

fraud and deceit by the Francik board was left intact.    Nevertheless, the

defendants/appellees herein seek to also use that Nevada 'judgment' for 'issue

preclusion' asserting that they may now claim that any subsequent allegations

by them of wrongdoing on appellant Wagner's part are allowable without legal

repercussion because of the earlier fraudulently alleged wrongdoing of selling

company shares, not his own shares as was actually the case.

IV

## Issues on Appeal

A.    DOES 'ISSUE PRECLUSION' ALLOW USE OF JUDGMENT
DOCUMENTS OBTAINED BY CRIMINAL FRAUD AND WITHOUT
AN ACTUAL TRIAL?

25.    It is uncontested in the facts detailed to the trial court below that

defendant/appellees Francik and WBGI used criminal activity on their part to

prevent an actual trial in their *WBGI v. Wagner* case ("*Second Hawaii Case*").
The facts show that defendant Francik committed perjury before a grand jury to
fraudulently obtain arrest warrants for both Wagners.  This is the same type of
conduct he had himself been arrested for and fired from the LAPD during the
infamous Rampart Investigation that left the LAPD under federal court
supervision for a decade.

26.    Accordingly, since issue preclusion requires that the issues to be
precluded have been actually litigated, and in that there was no actual litigation
of any issues at the purported "trial" resulting in the fraudulent "judgment", the
doctrine of issue preclusion is inapplicable herein with respect to that "*Second
Hawaii Case* "'judgment'.

26.    The facts further show that after obtaining such warrants, Francik
engaged in collusion with the trial court judge's judge pro tempore (Thomas
Yeh), who was also serving as defendant/appellee Francik's attorney, and with
the trial court itself, to have Linda Wagner arrested at the "trial" to prevent her
from testifying.  The facts further show that Linda Wagner was unaware she
would be arrested and that she was factually innocent of the false charges
defendant Francik had fraudulently lodged against her six weeks earlier.

21

27.    The facts further show that defendant Francik was acting as WBGI's agent at all times he was engaged in such reprehensible and illegal activity.  The facts further show that Linda Wagner was a critical key witness at that "trial" who was prepared to give testimony about all of the false and fraudulent allegations that had been made against both her, and her husband Walter Wagner (plaintiff/appellant herein), and that she had served as the Secretary and Treasurer for WBGI from 1995 to 2004, the period of time during which the Francik board was fraudulently alleging that plaintiff/appellant Wagner had engaged in a variety of financial 'misappropriations' and that she had explicit testimony pertaining to documents and records from that era showing that there were no such falsely alleged 'misappropriations' and that all of Wagner's WBGI financial expenditures as WBGI's President were lawful, valid, Board-approved, for the betterment of WBGI and materially benefitted the botanical garden.

28.    The question then is whether such "judgment" document, obtained by the criminal conduct of the plaintiff therein, and which document contains clearly false statements of fact that would not have been rendered as a judgment had the plaintiff not engaged in that criminal conduct, is able to serve as the basis for alleged "issue preclusion"

29.   In the instant matter, the defendants/appellees are seeking to use that judgment document as a basis to justify their continuing criminal conducts and civil misconducts in that civil action and elsewhere, which are now the subject of this action.   Defendant/appellee Francik did not limit his misconduct to lying to the grand jury.   He also continued to repeat those lies to the WBGI shareholders, to the local newspaper in Hilo to additionally sway the court and shareholders, as well as to his own board members.   This was a concerted effort to paint a false portrait of plaintiff/appellant Wagner to help insure that the "judgment" would be issued and stick, and not sent back for a new trial. Consequently, plaintiff/appellant Wagner is saddled with a phony judgment document obtained by clear fraud, and seeks a judgment herein that would include the value of the fraudulently obtained judgment against him, since that judgment could not be appealed (as detailed above).

30.   The claim is made by defendants/appellees that the issues purportedly resolved in their phony judgment document of 2008 allow them **a)** to falsely claim in 2010 that plaintiff/appellant Wagner stole $200,000 from a dedicated Visitor Center account while he served as WBGI President, even though the uncontested facts in the trial court below clearly show that the theft of that money was by defendants/appellees and they lied about it to the WBGI

shareholders as part of their scam to defame plaintiff/appellant Wagner; **b)** to falsely publish to the WBGI shareholders on the WBGI website the false and fraudulent claim that plaintiff/appellant Wagner and his wife were felons who had engaged in "identity theft" and "attempted theft", when in fact those claims were utterly false and without any form of factual foundation, and were dismissed in the court proceeding in which they had been fraudulently initiated by defendant/appellee Francik more than one year before such false publication, which false publication was part of their scam to defame the WBGI founders, including appellant herein, to the WBGI shareholders for the purpose of sustaining their illegal obtainment of control of the WBGI finances; **c)** to falsely impugn the record-keeping of appellant while serving as WBGI president, making false assertions that he kept incomplete records of the shareholder database, when in fact defendants/appellees lost many of those records during their tenure and sought to cover-up their own incompetence by falsely blaming plaintiff/appellant Wagner for their own incompetence, as part of their scam to cover up their own incompetence by falsely blaming plaintiff/appellant Wagner for their own wrongdoings.

31.    The trial court below erred in asserting that plaintiff/appellant Wagner obtained a "fair trial" because he erroneously assumed that Linda Wagner, who

was arrested and removed from the courtroom, was there for 'moral support' because she is plaintiff/appellant Wagner's wife, or because she is a woman not competent to testify, or both.  Accordingly, he erroneously concluded:

> "*The court finds that Mr. Wagner's argument is nonsensical. There is no evidence that Mr. Wagner himself was arrested or was prevented from appearing at the Second Hawaii trial. He cannot complain that he did not have a full and fair opportunity to litigate when he voluntarily chose not to appear.*"

32.   Of course, continuing with the charade of a "trial", with Wagner's critical key witness Linda Wagner now removed due entirely to the criminal conduct of defendant/appellee Francik, would not only have been pointless because he could not present the facts of the matter, but also would have served to negate his claim of not receiving a fair trial, because he had elected to participate in it and go along with the fraud.  Wagner's only proper course of conduct was indeed to obtain the release of his chief witness, his wife, from illegal detention, then return to the courtroom and proceed.  In doing so, however, the judge conducted the "trial" in his absence, knowing full well that he was depriving plaintiff/appellant Wagner of a fair trial in having removed his chief witness, as he had conspired in advance with his judge pro tempore Tom Yeh, who also served as the WBGI counsel, to remove Linda Wagner from the courtroom.

25

While that judge might not have known that Linda Wagner was guility of no crime, and that her arrest had been orchestrated by the criminal collusion with defendant/appellee Francik, he simply decided to deprive both her, as well as plaintiff/appellant Wagner, of the opportunity to a fair trial, assuring that his judge pro tempore, serving as WBGI's attorney, would have a cake-walk of a case with zero opposition. Contrary to the assertion of the trial court below that Wagner had the opportunity for a "fair trial", being deprived of his critical key witness through no wrong-doing on her part (or his) whatsoever assured that Wagner would have no fair trial.

33. Accordingly, it is Wagner's contention herein that deprivation of the right to a fair trial and an actual litigation of facts precludes the use of the fraudulently obtained "judgment" document for any purpose, including 'issue preclusion' because no issues were actually litigated. This has been detailed *ad nauseum* in plaintiff/appellant's pleadings herein detailing that case law requires for actual litigation of an issue before issue preclusion can be applied. Accordingly, without issue preclusion, defendants/appellees have no basis for dismissal of the underlying case. They have displayed an overwhelming lack of regard, not only for the rights of plaintiff/appellant Wagner with their incessant acts of fraud and defamation against him and his wife, but as well as for the shareholders of

26

WBGI, in that they have taken the $10,000,000 of asset with which they were entrusted and have, instead of making the company even more valuable, instead squandered the assets on themselves and their follies and bankrupted the company with their numerous frauds.

B.    DOES 'ISSUE PRECLUSION' ALLOW USE OF JUDGMENT DOCUMENTS OBTAINED BY CIVIL FRAUD AND WITHOUT AN ACTUAL FAIR TRIAL

34.    The uncontested facts in the court below show that in the Nevada judgment ("*Nevada Case*") the defendants/appelless engaged in overt fraud to prevent plaintiff/appellant Wagner from having a fair trial.  They deceived him and his witnesses, by stipulating in the Hawaii case that they would not litigate monetary claims in Nevada, and then proceeded to 'litigate' monetary claims nonetheless.  In doing so, Wagner was deceived into not flying his witnesses from Hawaii to Nevada to testify.  The sworn testimony in the trial court below shows that had they been allowed to testify, they would have fully refuted the fraud and lies of appellee Francik, who lied extensively to that trial court.

35.    One of the pillars of the doctrine of 'issue preclusion' is that the prior litigation have afforded a "full and fair" opportunity to litigate the issue in question.  Here, defendants/appellees seek to exclude claims pertaining to their false allegations that plaintiff/appellant Wagner kept poor records,

27

utilizing the Nevada 'judgment' as alleged prior litigation of the issue.   In fact, as shown in the uncontested facts of the trial court, had Wagner been afforded the opportunity to fly in his witnesses to Nevada, they would have demonstrated that he kept excellent records.   But absent those witnesses, and with Francik's lies challenged solely by a single witness (plaintiff/appellant Wagner himself, who was the only other person present who had evidence thereon), that trial court was bamboozled into believing Francik.   Accordingly, since there was no fair trial on facts pertaining to 'monetary claims', issue preclusion is inoperable, and this Court should rely solely on the <u>uncontested facts of the trial court below</u> showing that plaintiff/appellant Wagner kept excellent records, and was defamed by the false claim that he kept shoddy shareholder records.

## C.   ARE THE ISSUES HEREIN SUBSTANTIALLY DIFFERENT THAN IN PRIOR CASES SO AS TO RENDER ISSUE PRECLUSION INAPPLICABLE?

36.   It is hornbook law, detailed in the pleadings filed with the trial court below, that 'issue preclusion' requires that the issues to be precluded be substantially the same as the issues previously litigated.

28

37.    In the instant case, defendants/appellees defamed plaintiff/appellant Wagner by a) falsely accusing him to various WBGI shareholders of theft of $200,000 from a Visitor Center account when the uncontested facts show they themselves stole the money; b) falsely accusing him and his wife of being felons and publishing those false accusations to the WBGI shareholders on the WBGI website when the uncontested facts show no such criminal activity and that the criminal complaint was obtained purely by fraud and lying; and c) falsely accusing him of shoddy recordkeeping when the uncontested facts show that the defendants/appellees themselves are responsible for shoddy recordkeeping.

38.    None of those issues themselves were previously litigated in the prior actions, even if the 'judgments' had not been obtained by criminal fraud, and accordingly, issue preclusion cannot prevent them from being litigated now.

V

## Conclusion

40.    In summary, defendant Michie has been lying to the WBGI shareholders to cover up his own theft of funds.  One such shareholder, Louis Pratt wrote to defendant/appelle Michie inquiring as to what happened to that $200,000 in the Visitor Center Account and Michie fraudulently wrote back claiming that

29

plaintiff/appellant Wagner was the person who stole that money, in an effort to cover his tracks due to his own theft of that money. That issue of who stole the $200,000 was never previously litigated, as the theft was not known about during the previous litigations, so 'issue preclusion' is simply a smoke-screen, a further attempt to cover up that theft. Defendant/appellee Michie needs to be held accountable for his defamation of plaintiff/appellee, which was part of their orchestrated scheme to steal Wagner's assets and 'bury' him with their lies.

41.    Likewise, the publication on the WBGI website to the WBGI shareholders by defendants/appellees Francik and Robinson in 2010 of the false claims that the Wagners were felons and being prosecuted as such was also not litigated previously, because that false claim was not published on the WBGI website until long after the alleged 'issue preclusion' litigation, so that too is simply a smoke-screen to cover up their repeated acts of defamation they engaged in to maintain 'control' of the WBGI finances by falsely smearing the Wagners' reputation. Their 'control' lead WBGI inexorably to Nevada bankruptcy court.

42.    Still further, the continuing false allegations that the Wagners were felons, to news-media, shareholders, and numerous others, commencing in 2008 and thereafter until 2010, is also outside the scope of issue preclusion. At no time was it litigated in either those Hawaii or Nevada cases as to whether the

30

Wagners were felons, and accordingly 'issue preclusion' is likewise inapplicable even if the defendants/appellees had engaged in no wrong-doing in fraudulently obtaining those judgments. Those judgments simply did not 'litigate' the same issues, even though the alleged 'litigation' in both of those cases was simply a fraud on those courts, as detailed above, and not actually valid litigations.

43.     Plaintiff/Appellant Wagner seeks return of this case to the trial court for entry of a directed judgment of liability on the claims (which are wholly uncontested factually in the court below) of the complaint, with a trial set for determination of the actual dollar amount for the claims.

44.     Alternatively, plaintiff/appellant seeks return of this case to the trial court for trial on all of the claims of the complaint.

DATED:     July 27, 2013

Walter L. Wagner

## CERTIFICATE OF COMPLIANCE

I CERTIFY THAT THE FOREGOING *APPEAL OPENING BRIEF*, EXCLUDING ITS COVER PAGE, DOES NOT EXCEED THIRTY PAGES, ITS TYPE-FACE IS 14 POINTS, AND ITS WORD COUNT IS LESS THAN 14,000 AS COMPUTED BY THE WORD PROCESSING PROGRAM USED TO GENERATE THE DOCUMENT, EXCLUSIVE OF THIS CERTIFICATE OF COMPLIANCE.

WALTER L. WAGNER

## APPENDIX

Attached is a copy of the Lower Court decision appealed from.

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WALTER L. WAGNER,<br><br>Plaintiff,<br><br>vs.<br><br>PRESTON MICHIE, KENNETH FRANCIK,<br>LESLIE COBOS, MARK ROBINSON,<br>ANNETTE EMERSON, STEVE BRYANT,<br>and WORLD BOTANICAL GARDENS,<br>INC.,<br><br>Defendants. | MEMORANDUM DECISION<br><br>AND ORDER<br><br>Case No. 2:11-cv-784 |

There are a number of motions pending in the above-captioned matter. Over a year ago,

Defendant World Botanical Gardens, Inc. (WBGI) filed a Motion to Dismiss (Dkt. No. 5) and

Plaintiff Walter L. Wagner filed a Motion for a Preliminary Injunction (Dkt. No. 10). The

Honorable Paul Warner addressed these motions in his First Report and Recommendations (Dkt.

No. 30). Judge Warner recommended that the court deny Mr. Wagner's Motion for a

Preliminary Injunction. He then considered WBGI's motion to dismiss the claims pending

against it.

Judge Warner divided Mr. Wagner's claims into two categories. First, he recommended

that the court grant WBGI's motion as it pertained to Mr. Wagner's claims for fraud, waste, and

mismanagement because he found that Mr. Wagner lacked standing to bring these claims.

Second, Judge Warner assessed whether Mr. Wagner's claims for defamation should be

dismissed under the doctrine of issue preclusion, since Mr. Wagner has been involved in

numerous state court actions with these parties on similar matters. Mr. Wagner alleges claims

for slander and libel against WBGI for making false statements about three different topics: Mr.

Wagner's poor record-keeping, a fraudulent promissory note signed by Mr. Wagner's wife Linda

in 2004, and Mr. Wagner's misappropriation of WBGI funds. Judge Warner took judicial notice

of three state court decisions that dealt with these issues:

1.  *World Botanical Gardens, Inc. v. Wagner*, Case No. CV05-02079 (Second
    Judicial District for the State of Nevada, Oct. 2, 2006) ("Nevada");

2.  *Wagner v. World Botanical Gardens, Inc.*, Case No. 04-1-0232 (Third
    Circuit Court for the State of Hawaii, Nov. 13, 2007) ("First Hawaii"); and

3.  *World Botanical Gardens, Inc. v. Wagner*, Case No. 05-1-0210 (Third
    Circuit Court for the State of Hawaii, Oct. 9, 2008) ("Second Hawaii").

Given the findings made by these courts, Judge Warner found that the Nevada decision

barred Mr. Wagner's claim related to record-keeping; that the First Hawaii decision barred Mr.

Wagner's claim concerning the 2004 promissory note; and that the Second Hawaii decision

barred Mr. Wagner's claim about misappropriation. But because Judge Warner did not have

proof that any of these decisions were final, he found that WBGI had not satisfied a required

element to establish issue preclusion. Accordingly, Judge Warner recommended that the court

deny WBGI's Motion to Dismiss as it pertained to the defamation claims without prejudice to

refile if the state court decisions became final.

After Judge Warner issued his First Report and Recommendations, WBGI submitted a

second Motion to Dismiss (Dkt. No. 39) and a Motion to Stay (Dkt. No. 41). The individual

Defendants also submitted a Motion to Dismiss (Dkt. No. 52). In these motions, the Defendants

2

11

presented evidence that the Nevada decision was affirmed by the Nevada Supreme Court; that the

Intermediate Court of Appeals of Hawaii reversed the First Hawaii decision on a quantum meruit

claim but affirmed the decision in all other respects; and that the Hawaii Supreme Court denied a

petition for a writ of certiorari for the Second Hawaii decision, which was affirmed by the

Intermediate Court of Appeals of Hawaii. As a result, the parties argued that the defamation

claims related to poor record-keeping and misappropriation of funds should be dismissed, and

that the court should stay the remaining defamation claim concerning the 2004 promissory note

until the First Hawaii court issued a final decision. In his Second Report and Recommendations

(Dkt. No. 75), Judge Warner agreed that the Defendants' arguments were valid and adopted their

recommendations.

Mr. Wagner has filed an Objection to Judge Warner's First Report and Recommendations

(Dkt. No. 32) as well as an Objection to the Second Report and Recommendations (Dkt. No. 77).

In his first set of objections, Mr. Wagner argues that only issues concerning the identity of

WBGI's proper governing board were litigated in the Nevada court, and that therefore the court's

decision cannot be used to preclude him from now litigating issues about his record-keeping.

The court disagrees. The Nevada court ultimately decided which of two competing boards of

directors should control WBGI. But to reach this decision, the Nevada court resolved a number

of related factual and legal issues, including whether Mr. Wagner misappropriated funds,

whether he kept proper records, and whether his removal from the board of directors was proper.

Mr. Wagner had ample opportunity to argue these issues during the Nevada litigation and is now

barred from asking this court to reconsider factual matters that the Nevada court has already

addressed.

3

Second, Mr. Wagner contends that he did not have a full and fair opportunity to litigate the issues addressed by the Second Hawaii court because his wife was arrested during those proceedings on a bench warrant. Mr. Wagner asserts that he could not present his own testimony during that trial because he had to bail his wife out. The court finds that Mr. Wagner's argument is nonsensical. There is no evidence that Mr. Wagner himself was arrested or was prevented from appearing at the Second Hawaii trial. He cannot complain that he did not have a full and fair opportunity to litigate when he voluntarily chose not to appear. In any event, the Second Hawaii court had already decided issues concerning Mr. Wagner's conversion and misappropriation on a motion for partial summary judgment, long before Ms. Wagner was arrested at trial.

Third, Mr. Wagner challenges Judge Warner's finding that Mr. Wagner lacked standing to bring his fraud, waste, and mismanagement claims against WBGI. Mr. Wagner claims that the sale in which his remaining interest in WBGI was sold was conducted fraudulently. But, as the Second Hawaii court found, this sale was conducted according to a valid Nevada court order and under court direction. In essence, Mr. Wagner is asking a federal court to question the sufficiency of a state court proceeding for reasons wholly unrelated to any federal law. The court declines Mr. Wagner's invitation.

In his second set of objections, Mr. Wagner argues that Judge Warner failed to consider a number of affidavits that Mr. Wagner submitted in support of his contention that the Nevada and Hawaii state court decisions were fraudulently obtained. But Judge Warner was considering purely legal issues on a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. These legal decisions do not depend on any of the factual issues raised by Mr.

4

13

Wagner in his supporting affidavits. As a result, it was appropriate for Judge Warner to disregard them. In any event, even if the state court proceedings were indeed tainted by the fraudulent actions of some of the parties (a fact of which the court is highly skeptical), Mr. Wagner must challenge those decisions using procedures outlined by state law. This court will not overturn a state court decision on the grounds that Mr. Wagner suggests, no matter how many affidavits he submits.

Second, Mr. Wagner contends that the Hawaii appellate court's decision on the First Hawaii matter resolves his claims in his favor. The court generously concludes that Mr. Wagner's argument is born out of a misapprehension of the Hawaii court's ruling. The Hawaii Court of Appeals held: "We conclude that summary judgment was not warranted as to Wagner's claim based on quantum meruit, and further proceedings on remand are required as to this claim. In all other respects, we affirm the circuit court." *Wagner v. World Botanical Gardens, Inc.*, 268 P.3d 443, 446 (Haw. Ct. App. 2011). These "other respects" include a claim based on the 2004 promissory note, which the First Hawaii court denied. It is clear that the Court of Appeals took no issue with the First Hawaii court's finding that the 2004 promissory note was fraudulent. In any event, the appellate court did not resolve Mr. Wagner's claims in his favor, since even Mr. Wagner's quantum meruit claim faces a number of hurdles on remand. These hurdles include issues about whether he was required to be licensed to recover and whether his claim is barred by the "multitude of evidence suggesting questionable conduct by Wagner." *Id.* at 456.

Finally, Mr. Wagner argues that he should be able to proceed with the part of his defamation action that concerns an indictment against him that the Defendants allegedly published on the WBGI website. But Mr. Wagner's claim appears to be nothing more than an

5

14

assertion that the Defendants published a document available in the public record. *See State of Hawaii v. Wagner*, Case No. 3-PC-08-1-97 (indictment filed February 28, 2008). This action does not constitute a claim for defamation.

Because the court is not persuaded by any of Mr. Wagner's objections, the court adopts all of Judge Warner's recommendations except for one. The court sees no reason to stay the case until resolution of the First Hawaii decision because the court finds ample reasons to dismiss the case immediately.

While Judge Warner focused on the First Hawaii court's treatment of the 2004 promissory note, other courts have also addressed this issue. Most importantly, the Second Hawaii court made an identical finding in its Findings of Fact: "After August of 2003, Defendant Linda Wagner executed numerous documents purporting to be WBGI documents using the title of WBGI Treasurer, without authority or authorization to do so, including a Promissory Note dated January 1, 2004." *Second Hawaii Decision* ¶ 73. Based on this statement, the court holds that the Second Hawaii court has already addressed an identical issue to the matter that Mr. Wagner now attempts to bring before this court. And as discussed above, Mr. Wagner had a full and fair opportunity to litigate the matters that were considered by the Second Hawaii court. Since the Second Hawaii decision is now final for the purposes of issue preclusion, Mr. Wagner is barred from asserting any claims based on the 2004 promissory note. The court therefore dismisses all of Mr. Wagner's claims on the grounds that they have been previously litigated.

The court notes that a myriad of other reasons exist to dismiss this case. If the court determined that issue preclusion did not bar Mr. Wagner's causes of action, the court would nevertheless issue an Order to Show Cause why the case should not be dismissed for failure to

6

15

comply with Rule 11(b) of the Federal Rules of Civil Procedure. The court is convinced that this case has been filed for the purpose of harassing the Defendants. The Second Hawaii court labeled Mr. Wagner a vexatious litigant for commencing at least five civil actions that were determined adversely to him, as well as for filing in bad faith numerous frivolous motions that were intended for the sole purpose of causing unnecessary delay. The number of instances of Mr. Wagner's fraudulent conduct, false representations, and unauthorized actions listed by both the Second Hawaii court and the Nevada court are too legion to list here. As one example, Mr. Wagner was able to obtain a default judgment against WBGI without its knowledge by telling the Second Hawaii court that WBGI did not have any officers or directors and that WBGI did not object to the default being taken.[1] *Second Hawaii Decision* ¶ 96. Given this background, it is highly unlikely that Mr. Wagner's current suit was brought in good faith. It is also doubtful that Mr. Wagner's Complaint satisfies the pleading standards required by Rule 8 of the Federal Rules of Civil Procedure. It is even doubtful that the court has jurisdiction to hear this matter, as Mr. Wagner presents no federal question and bases his claim to diversity jurisdiction on unsupported assertions that the amount in controversy is over $75,000. All of these observations support the court's decision to dismiss the case.

## CONCLUSION

For the reasons stated above, Mr. Wagner's objections are OVERRULED and the court adopts Judge Warner's First Report and Recommendations (Dkt. No. 30) in full. The court adopts Judge Warner's Second Report and Recommendations (Dkt. No. 75) with the exception

---

[1] The Second Hawaii court later granted relief from its entry of default when it realized that WBGI did indeed have a board of directors who had never received notice of the lawsuit.

7

16

that it declines to stay the case. Instead, the court dismisses all of Mr. Wagner's claims. As a result, the Defendants' Motions to Dismiss (Dkt. Nos. 39 & 52) are GRANTED. WBGI's first Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction (Dkt. No. 5) and its Motion to Stay (Dkt. No. 41) are DENIED AS MOOT. Mr. Wagner's Motion for a Preliminary Injunction (Dkt. No. 10) is DENIED. The court orders the Clerk of the Court to close the case.

SO ORDERED this 22nd day of April, 2013.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

8

17