U.S. C____ ____ ____

**Case No. 13-4082**

2013 NOV -1  PM 12 10

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

| | |
|---|---|
| WALTER L. WAGNER, ) | |
| ) | Case No. 13-4082 |
| Appellant and Plaintiff ) | |
| ) | (Dist No. 2:11cv00784; Utah) |
| vs. ) | |
| ) | **PETITTION FOR REHEARING** |
| PRESTON MICHIE, KENNETH ) | ***EN BANC*** **(FRAP Rule 35)** |
| FRANCIK, LESLIE COBOS, MARK ) | |
| ROBINSON, ANNETTE EMERSON ) | (Appeal from decision of US |
| STEVE BRYANT, WORLD BOTANICAL ) | District Judge Robert J. Shelby) |
| GARDENS, INC. (WBGI), ) | |
| ) | ORAL ARGUMENT |
| Appellees and Defendants ) | REQUESTED |
| ) | |

WALTER L. WAGNER, Appellant/Plaintiff
532 N 700 E
Payson, Utah 84651
retlawdad@hotmail.com
808-443-6344

## PETITION FOR REHEARING *EN BANC*

Appellant Walter L. Wagner respectfully petitions for rehearing *en banc* of his appeal.

The panel decision conflicts with a decision of the United States Supreme Court and of other appellate court jurisdictions, and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions.

Further, the proceeding involves questions of exceptional importance on which the panel decision conflicts with authoritative decisions of numerous other United States Courts of Appeal that have addressed the issue.

It appears as if this significant issue has been overlooked or misconstrued by the panel, necessitating it be addressed *en banc*.

I

## FRAUD ON THE COURT

The essence of the appellees/defendants' argument has been that they obtained a purported "judgment" in a state trial court, and that appellant/plaintiff Wagner may not now show that the purported "judgment" was obtained by fraud

on the court. Appellees/defendants seek to use that fraudulent state "judgment"

for purposes of 'issue preclusion' in the case that appellant/plaintiff Wagner

filed against appellees/defendants in Federal court based on diversity jurisdiction.

In support of a showing of fraud on the state trial court, appellant/plaintiff

Wagner presented numerous individuals who filed sworn affidavits in the trial

court below, establishing fraud on that state court in obtaining the purported

"judgment", and showing but for that fraud, no such "judgment" would have

issued. Appellees apparently believe that once they obtained the purported

"judgment" that appellant may not thereafter collaterally attack the purported

"judgment" in Federal court, and they filed no affidavits or other evidence to

counter appellant's extensive evidence that the purported "judgment" was

obtained purely by fraud on the state court, and but for that fraud, no such

"judgment" would have reasonably issued. Accordingly, appellant Wagner

argues that the purported "judgment" cannot be used for issue preclusion in the

trial court below, as the purported "judgment" was obtained solely by fraud, and

the fraud has not been contested whatsoever by appellees by way of evidence

to counter appellant's extensive evidence of fraud on the state trial court.

II

## APPELLATE PANEL MISAPPREHENDS THE FRAUD

2

Rather than address the issue of whether fraud on a state trial court can serve to vitiate against 'issue preclusion' when a party seeks to invoke the fraudulently obtained "judgment" as a basis for issue preclusion, the appellate panel appears instead to have believed the fraud itself. In its opinion it quoted extensively from the fraudulently obtained state court "judgment" as if those quotations were true, when in fact they were fraudulent as shown by appellant/plaintiff's numerous sworn affidavits.

It appears as if the appellate panel only casually read through the pleadings, and focused on the words of the fraudulent "judgment" itself, not recognizing that they were words written solely because of the fraud on that state court. The fraud itself was cunning and clever, by a party skilled in the art of working frauds on courts and grand juries, as detailed by the sworn affidavits in the trial court below. This will be discussed somewhat further below.

The appellate panel appears to invite appellant/plaintiff Wagner to argue the existence of the fraud in that state court, rather than seek to collaterally attack the fraudulent judgment in Federal court, as they do not want to be bothered with analyzing such fraud. This is in error for a number of reasons.

First, the fraudulently obtained purported "judgment" is already dismissed by way of a Federal bankruptcy proceeding[1]. Accordingly, appellant/plaintiff Wagner does not have standing to appear before that state court seeking dismissal of a "judgment" that has already been dismissed by way of Federal court action. On what basis could he appear before that state court and ask it to further dismiss the "judgment" due to the fraud, when it is already dismissed?

Second, and more importantly, this line of reasoning is entirely at odds with other United States Court of Appeals decisions from other Circuits as well as at odds with the United States Supreme Court decisions. It has long been the law, *discussed infra*, that a judgment obtained by fraud on the court is never a final judgment, and that there is no statute of limitations for bringing an action for fraud on the court. In the instant matter, appellant/plaintiff Wagner is asserting, as an affirmative defense to the claimed defense of 'issue preclusion' being asserted by appellees/defendants to Wagner's numerous tort actions against appellees/defendants, that the purported "judgment" sought to be

_____

[1] *In re Wagner*, Utah Bankrutpcy Court No. 12-35494, A.P. No. 13-02099; Appellee herein WBGI has filed an adversary proceeding seeking to reverse that dismissal, but has filed zero evidence to counter Wagner's extensive evidence also filed therein that the "judgment" is fraudulent.

4

utilized for such 'issue preclusion' is entirely fraudulent, and was obtained solely by fraud on the state court.

III

## FRAUD WORKED BY CLEVER FRAUDSTER FOOLED PANEL

The fraud itself was clever and cunning, and appellant/plaintiff Wagner was unaware that such a fraud would be worked in that state court, and he was caught completely unawares by a master deceiving fraudster.  That deceiving fraudster had extensive experience in working frauds on grand juries and state judges over the course of many years, until he was finally caught, fired from the Los Angeles Police Department as part of their ongoing *Ramparts Corruption* investigation, and ultimately prosecuted for such felony circa 1995[2].

After leaving the Los Angeles area, that fraudster encountered appellant/plaintiff Wagner in Hawaii, where Wagner then lived.  The fraudster sought to seize Wagner's assets in the WBGI corporation that Wagner founded. Utilizing money he stole from WBGI, the fraudster began working a fraud on

_____

[2] This is detailed in the briefing filed by Wagner herein, supported by numerous affidavits filed in the trial court below, and is based on the fraudsters own confessions to his past wrong-doings, essentially declarations against interest given in a heated verbal exchange he'd had with Wagner.

5

Wagner that he was well practiced at. He appeared before a grand jury and gave knowingly false testimony, obtaining a false warrant against Wagner and Wagner's spouse[3], Linda Wagner. This was then kept secret from Wagner, but the fraudster began colluding with the unsuspecting state judge.   In that collusion, the unsuspecting state judge, believing the arrest warrant that he himself had signed was valid and not obtained by perjured testimony, arranged with the fraudster to arrest Wagner's key witness (Wagner's spouse, whose sworn affidavit filed in Bankruptcy court on this issue is attached as an exhibit to Wagner's *Reply Brief*) at a civil trial.

The referenced civil trial was entitled *WBGI v. Wagner*, and was a fraud initiated by the fraudster as part of his effort to seize Wagner's assets. Numerous fraudulent accusations had been made against Wagner by that fraudster in that civil suit, based on Wagner's conduct of developing WBGI, a botanical garden tourist attraction in Hawaii. None of the accusations were true, as is detailed by Wagner's numerous sworn affidavits filed in the court below.

_____

[3] This too is extensively detailed in the briefing filed herein, and fully supported by the numerous sworn affidavits filed in the trial court below; affidavits which were never contested by appellees/defendants.

6

"trial", drafted the "judgment" document with the wording they desired, and presented it to the deceived judge for his signature. It is that "judgment" that appellees/defendants now seek to utilize for 'issue preclusion', and from which "judgment" the Magistrate Judge quoted extensively and favorably, being itself deceived by that fraud. This was in essence adopted by the Panel as if it were true, without examining the fraud as is well-detailed in the sworn affidavits.

The court below also references the earlier filed state case entitled *Wagner v. WBGI*. It asserts that it was filed for purposes of harassment. Yet the state appellate court agreed with Wagner that he set forth a valid claim for *quantum meruit*, even though dismissing his claim for breach of Promissory Note. The harassment was entirely on the part of the fraudster who stole approximately $900,000 from WBGI to work his frauds and deceits on those state courts, bankrupting WBGI in the process. The claim that Wagner's Promissory Notes were "fabricated" is only true in the sense that Wagner wrote them and signed them (as was his position with WBGI). That appellate court did not seek to overturn the trial court's conclusion that they were 'fabricated', preferring instead to allow Wagner to proceed on the claims for back-pay in state court on the *quantum meruit* aspect. As that case is still at the trial court level (stayed during the pendency of WBGI's bankruptcy proceeding), Wagner

8

fully expects to show that the Promissory Notes were fabricated only in the sense that they were made/prepared by Wagner over the course of nearly a decade (one each year for nine years) but that there was no fraud in their preparation, as the court below apparently believed and as was the Panel also apparently deceived.

Rather than consider Wagner's sworn affidavits from numerous parties that frauds were worked on that state court (as well as on the other state court in Nevada on a lesser issue), both the court below and the Panel which quoted approvingly from it, does not believe that appellant/plaintiff Wagner should be "*asking a federal court to question the sufficiency of a state court proceeding for reasons wholly unrelated to any federal law*" and that the court below would "*not overturn a state court decision on the grounds that Mr. Wagner suggests, no matter how many affidavits he submits*" because Wagner needed first to "*challenge those decisions using procedures outlined by state law.*"[4]

Essentially, they are asserting that they believe the fraud and therefore will not address Wagner's claims that that fraud precludes use of the purported "judgment" for purposes of issue preclusion. As shown below, this is an error in

―――――――――――――――

[4] Page 9, bottom of first full paragraph of the Panel opinion; and second paragraph of that same page; respectively.

law not comporting to the requirements of the United States Supreme Court and other Circuits in how fraud on the court is addressed.

IV

## FRAUD UPON THE COURT

The appellees/defendants are essentially asking this Court to ignore the fraud worked upon the state courts, as that fraud was detailed in numerous sworn affidavits filed in the court below, and instead proceed with the purported "judgments" obtained by that fraud, and the 'issue preclusion' inferred therefrom, since it has not been challenged in state court since Wagner relocated to Utah.

Yet it has long been held that a decision produced by fraud on the court is not, in essence, a decision at all and never becomes final. *Kenner v. Comm'r of Internal Revenue*, 387 F.2d 689, 691 (**Seventh Circuit** 1968).[5]

_____

[5] See also for example Illinois law: *The People of the State of Illinois v. Fred E. Sterling*, 357 Ill. 354; 192 N.E. 229 (1934) ("*The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions.*"); *Allen F. Moore v. Stanley F. Sievers*, 336 Ill. 316; 168 N.E. 259 (1929) ("*The maxim that fraud vitiates every transaction into which it enters ...*"); *In re Village of Willowbrook*, 37 Ill.App.2d 393 (1962) ("*It is axiomatic that fraud vitiates everything.*"); *Dunham v. Dunham*, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); *Skelly Oil Co. v. Universal Oil Products Co.*, 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); *Thomas Stasel v. The American Home Security Corporation*, 362 Ill. 350; 199 N.E. 798 (1935).

10

The effect of fraud on the court is clear. It has long been held that all courts have the inherent equitable power to vacate a judgment that has been obtained through the commission of fraud upon the court. *Universal Oil Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946).  This does not restrict the court to solely fraud in its own courtroom, but fraud worked on other courts as well.

The United States Supreme Court has gone so far as to assert that there is not a statute of limitations for bringing a claim of fraud upon the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* (1944), 322 U.S. 238, 64 **Supreme Court** 997, 88 L.Ed. 1250.  In other words, Wagner is privileged to raise this issue of fraud on the state court at any time.  Nor is there any restriction that it can be raised solely in the court in which it arose.  This is even truer because Wagner no longer has standing to raise it in that state court, as the "judgment" has been dismissed by federal bankruptcy court action.

Moreover, it is not plaintiff/appellant Wagner who is seeking to assert the "judgment" in federal court, it is the appellees/defendants who are introducing that fraud into federal court, and certainly Wagner has the right (and duty) to expose that fraud in federal court.  Nor could he request a stay in his tort claim action while he first flies to Hawaii to challenge the fraud that arose in that state

11

court.  Rather, he is obligated to challenge it where it is presented – in federal

court by the defendants/appellees.

The **First Circuit** has given great exposition in *Aoude* on how to confront

a party engaged in odious malfeasance as herein, and has stated that:

" *'bread of deceit is sweet to a man ... afterwards his mouth shall be filled with gravel.' Proverbs 20:17."*

and

*"We believe that the <u>district courts must be accorded considerable latitude in dealing with serious abuses of the judicial process</u> and that the trier's determination to dismiss a case for such a reason should be reviewed only for abuse of discretion. See, e.g.,* <u>Link v. Wabash R.R. Co.</u>, *370 U.S. 626, 633, 82 **Supreme Court** 1386, 1390, 8 L.Ed.2d 734 (1962);* <u>HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.</u>, *847 F.2d 908, 916-17 (**First Circuit** 1988);* cf. <u>Fashion House, Inc. v. K mart Corp.</u>, *892 F.2d 1076, 1081 (**First Circuit** 1989) (district court's choice of sanctions for discovery violation will only be set aside for abuse of discretion);* <u>Damiani v. Rhode Island Hospital</u>, *704 F.2d 12, 15-16 (**First Circuit** 1983) (similar).*"

and that

"*fraud upon the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense. See, e.g.,* <u>Alexander v. Robertson</u>, *882 F.2d 421, 424 (**Ninth Circuit** 1989);* <u>Pfizer, Inc. v. International Rectifier Corp.</u>, *538 F.2d 180, 195 (**Eighth Circuit** 1976); England v. Doyle, 281 F.2d 304, 309 (**Ninth Circuit** 1960);* <u>United Business Communications, Inc. v. Racal-Milgo, Inc.</u>, *591 F.Supp. 1172, 1186-87 (D.Kan.1984);* <u>United States v. ITT Corp.</u>,

*349 F.Supp. 22, 29 (D.Conn.1972), aff'd mem., 410 U.S. 919, 93* **Supreme Court** *1363, 35 L.Ed.2d 582 (1973)*".

and

"*There is not the slightest unfairness in holding plaintiff responsible for the bitter fruit of the scheme which he masterminded …*"

*Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1115, 1115, 1118, 1119, 15 Fed.R.Serv.3d 482 (**First Circuit** 1989)

The **Second Circuit** has stated that fraud upon the court is "fraud which seriously affects the integrity of the normal process of adjudication", *Gleason v. Jandrucko,* 860 F.2d 556, 559 (**Second Circuit** 1989).  None of these decisions pertaining to fraud on the court restrict a court to solely reviewing fraud in their own courtroom, and they may freely review frauds on other courts that are subsequently brought into their own courtroom, as is the case herein.

One cannot imagine a more serious affection of the integrity of the process of adjudication than occurred herein, in which Wagner was deprived of an actual trial in a state court, and instead a mock "trial" was conducted upon which "judgment" therein appellees/defendants rely upon for issue preclusion. Likewise, he was deprived of a valid trial in the Nevada state court by similar fraud, detailed in the briefing herein, though on a lesser monetary claim.

Both the court below as well as the Panel, instead argue that Wagner is obligated to return to Hawaii to first argue the existence of fraud by challenging

those "judgments" by "*using procedures outlined by state law.*" Nothing in federal statutory law or case law requires this, and the Panel decision is directly contradictory to the decisions in several other federal Circuit Courts, and contradictory to the United States Supreme Court on how fraud on the court is to be addressed.

V

## CONCLUSION

Defendants/appellees have introduced a fraud into federal court; namely a purported "judgment" that they obtained by fraud on the state court that issued the "judgment". That "judgment" was subsequently dismissed in federal bankruptcy court.

Rather than address the issue that fraud is being worked on the federal court by introduction of a purported state court "judgment" for purposes of 'issue preclusion', the Panel suggests that plaintiff/appellant Wagner must first go back to that state court to address the fraud there, and cannot now show that the "judgment" was issued by fraud. This is their opinion even though NONE of numerous sworn affidavits filed in the court below detailing the fraud were contradicted by even a single affidavit in opposition, as no such affidavits were filed, and the fraud on the state court remains <u>uncontested</u>.

14

This opinion, that appellant/plaintiff Wagner must first address the fraud on the state court back in the state court that issued the purported "judgment" is contradicted by the opinions of numerous Circuit Courts of Appeal, as well as the United States Supreme Court. The court below simply cursorily addressed the issue of fraud, drew the false conclusion that Wagner had a "fair trial" because he himself was not arrested even though his key witness was, and concluded that he could not defend against the fraudulent claims being introduced into his courtroom by the numerous sworn affidavits he filed therein detailing the fraud on the court. The fraudster was highly experienced at generating fraud and deceit on the courts, having done so for many years while working under the auspices of the Los Angeles Police Department, before he was found out, terminated, and prosecuted in conjunction with the Ramparts Scandal investigation. This must not become the norm for the courts.

Plaintiff/appellant Wagner requests oral argument on his briefing before the full court.

DATED:     October 30, 2013

_Walter L. Wagner_

Walter L. Wagner

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

October 18, 2013

TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

WALTER L. WAGNER,

        Plaintiff - Appellant,

v.

PRESTON MICHIE; KENNETH
FRANCIK; LESLIE COBOS; MARK
ROBINSON; ANNETTE EMERSON;
STEVEN BRYANT; WORLD
BOTANICAL GARDENS, INC.,

        Defendants - Appellees.

No. 13-4082
(D.C. No. 2:11-CV-00784-RJS)
(D. Utah)

---

### ORDER AND JUDGMENT[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Plaintiff and appellant, Walter L. Wagner, proceeding *pro se*, appeals the dismissal of claims he brought against the World Botanical Gardens, Inc. ("WBGI") and former and current board members of WBGI.[1] For the following reasons, we affirm that dismissal.

## BACKGROUND

Mr. Wagner is a former officer and shareholder of WBGI. In his amended complaint in the instant case, Mr. Wagner brought six causes of action against WBGI and the other defendants. He brought claims for slander and libel on three different topics: his (Mr. Wagner's) record-keeping, alleged misappropriation by Mr. Wagner of WBGI funds, and the circumstances surrounding a 2004 promissory note ("2004 Note"). Mr. Wagner also alleged that WBGI had engaged in fraud, waste, and mismanagement.

In addition to the instant matter, there are three state court decisions involving Mr. Wagner that are related to this case and of which the district court took judicial notice. As described by the magistrate judge and the district court, these actions are:

---

[1] The defendant Board Members are Preston Michie, Kenneth Francik, Leslie Cobos, Mark Robinson, Annette Emerson, and Steve Bryant.

We note that this appeal is currently abated as it relates to WBGI only (but not the remaining defendants), because that organization filed a Chapter 11 bankruptcy petition in April. That abatement shall continue.

-2-

1.    <u>World Botanical Gardens, Inc. v. Walter Wagner, et al.</u>;
      Second Judicial District for the State of Nevada, Washoe
      County; Case No. CV05-02079; dated October 2, 2006
      ("Nevada Decision I").

2.    <u>Walter Wagner v. World Botanical Gardens, Inc.</u>; Third Circuit
      Court for the State of Hawaii; Civil No. 04-1-0232; dated
      November 13, 2007 ("First Hawaii Decision I").

3.    <u>World Botanical Gardens, Inc. v. Walter Wagner, et al.</u>; Third
      Circuit for the State of Hawaii; Case No. 05-1-0210; dated
      October 9, 2008 ("Second Hawaii Decision I").

Report & Recommendation I (03/05/2012) at 3. Each of the above state court

decisions resulted in further state court proceedings/history, of which the district

court also took judicial notice:

1.    <u>Walter L. Wagner, et al. v. World Botanical Gardens, Inc.</u>,
      Supreme Court of the State of Nevada, Washoe County, Case
      No. 48428, dated January 15, 2008 (unpublished), <u>cert. denied</u>,
      555 U.S. 827 (2008) ("Nevada Decision II").

2.    <u>Walter Wagner v. World Botanical Gardens, Inc.</u>, 268 P.3d 443
      (Haw. Ct. App. 2011) ("First Hawaii Decision II").

3.    <u>World Botanical Gardens, Inc. v. Walter Wagner, et al.</u>, 265
      P.3d 493 (Haw. Ct. App . 2011), <u>cert. denied</u>, 2011 Haw.
      LEXIS 265 (Haw. 2011) ("Second Hawaii Decision II").

Report & Recommendation II (11/05/2012) at 4.

     As the above citations indicate, on January 15, 2008, the Nevada Supreme

Court issued the Nevada Decision II, which affirmed the Nevada Decision I and,

on October 6, 2008, the United States Supreme Court denied Mr. Wagner's

petition for a writ of certiorari. On December 23, 2011, the Intermediate Court of

-3-

Appeals of Hawaii issued the First Hawaii Decision II. The First Hawaii

Decision II reversed the First Hawaii Decision I on Mr. Wagner's claim for

quantum meruit, but affirmed the First Hawaii Decision I in all other respects.

The case was remanded and is now apparently pending before the trial court.

When Mr. Wagner appealed the Second Hawaii Decision I to the Intermediate

Court of Appeals of Hawaii, the court affirmed that Second Hawaii Decision I

with the Second Hawaii Decision II. Mr. Wagner then filed a petition for a writ

of certiorari with the Hawaii Supreme Court, which rejected the petition.

The district court further described the substantive allegations in each state

court decision, as follows:

### Nevada Decision [I]

WBGI sued Wagner in Nevada state court to obtain an
injunction against Wagner's ongoing interference with WBGI's
operations. After a three-day trial, the Nevada Court entered the
Nevada Decision [I]. The Nevada Decision [I] described "a
relentless conspiracy and campaign by Defendant Walter Wagner and
the other Remaining Defendants to gain control of WBGI at any
cost." The Nevada [Decision I] found that Wagner:

> had diverted funds to his personal accounts, failed to
> keep proper financial records, . . . failed to pay
> employment taxes, failed to file corporate income tax
> reports, [and] failed to keep accurate records of
> shareholders. [WBGI board members] also discovered
> the Internal Revenue Service had placed a lien on
> WBGI's real property to secure payment of overdue
> payroll taxes.

The Nevada [Decision I] also ruled that Wagner "intentionally and
illegally engaged in a fraudulent scheme to sell shares of WBGI

-4-

stock to unsuspecting purchasers." Based on its findings of fact, the Nevada [Decision I] ruled that "[t]he removal of Defendant Walter Wagner from the WBGI Board of Directors was proper." The Nevada [Decision I] also found that "[f]rom Defendant Walter Wagner's removal through the present, the WBGI Board of Directors has properly managed the business and affairs of WBGI."

The Nevada Court entered a permanent injunction against Wagner ordering him to cease creating or participating in an alternate board of directors, interfering with WBGI's business affairs, altering signature cards of WBGI bank accounts, or attempting to sell WBGI property. . . .

### First Hawaii Decision [I]

Wagner sued WBGI seeking recovery of "deferred salary" in the form of the 2004 Note. WBGI purportedly executed the 2004 Note (and prior notes referenced in the 2004 Note) in favor of Wagner in the amount of $340,736.75. The First Hawaii [Decision I] found that the "promissory notes are fabrications" and that "Wagner's own statements to the Court also constitute admissions that the promissory notes are fabrications." The First Hawaii [Decision I] ultimately ruled that "[t]he 2004 [Note] . . . was fraudulently created." In addition, the First Hawaii [Decision I] stated that "Wagner has engaged in a course and pattern of fraud dating to the period before WBGI was incorporated." Among Wagner's conduct identified by the court was the following: signing promissory notes as an officer of a nonexistent corporation, signing promissory notes without shareholder approval, concealing information about the promissory notes and the lawsuit from WBGI's shareholders and directors, and making fraudulent representations to the court in order to induce the entry of a default judgment. . . .

### Second Hawaii Decision [I]

WBGI initiated this case against Wagner to recover corporate funds Wagner misappropriated and converted for his personal use. The Second Hawaii [Decision I] issued extensive findings of fact, conclusions of law, and an order detailing Wagner's conduct. The Second Hawaii [Decision I] ruled that Wagner "diverted WBGI funds [for] personal purposes. These included funds for [a] personal

-5-

mortgage, property tax payments[,] personal credit card payments[,] and for debts incurred to creditors for personal expenditures. The Second Hawaii [Decision I] found that Wagner mischaracterized corporate funds as loans, business expenses, and salary.

The Second Hawaii [Decision I] went on to find Wagner guilty of abuse of process and malicious prosecution, and declared Wagner a vexatious litigant for "relitigating or attempting to relitigate in propria persona and in bad faith the validity of final determinations in Nevada adverse to defendants involving WBGI who prevailed on all issues in dispute."

Report & Recommendation I at 3-6 (footnotes and citations omitted). As the

above recitation states, these decisions were, in all but one small respect, affirmed

by the highest state court.

As indicated, the instant case involves Mr. Wagner's claims of slander,

libel, fraud, waste and mismanagement by WBGI and the other individual

defendants. Defendant WBGI filed a motion to dismiss; Mr. Wagner filed a

motion for a preliminary injunction.

The magistrate judge addressed these motions in his Report &

Recommendation I. He recommended that the court deny Mr. Wagner's motion

for a preliminary injunction. With respect to WBGI's motion to dismiss, the

magistrate judge divided Mr. Wagner's claims into two categories: First, the

magistrate judge recommended that the court grant WBGI's motion to dismiss as

it pertained to Mr. Wagner's claims for fraud, waste and mismanagement because

Mr. Wagner lacked standing to bring those claims. Second, regarding

Mr. Wagner's claims for defamation, the magistrate judge recommended that they

-6-

be dismissed under the doctrine of issue preclusion since Mr. Wagner had

litigated these matters in the various state court actions described above and of

which the court took judicial notice. As the district court stated,

> Given the findings made by these [state] courts, [the
> magistrate judge] found that the Nevada [D]ecision barred Mr.
> Wagner's claim related to record-keeping; that the First Hawaii
> [D]ecision [I] barred Mr. Wagner's claim concerning the 2004
> promissory note; and that the Second Hawaii [D]ecision [I] barred
> Mr. Wagner's claim about misappropriation.

Mem. Decision & Order at 2. At the time of the (first) Report &

Recommendation I, however, the state court decisions were not final. Because of

that circumstance, the magistrate judge found that WBGI had not satisfied a

required element (finality) to establish issue preclusion. Accordingly, the

magistrate judge recommended that the district court deny WBGI's motion to

dismiss as it pertained to the defamation claims without prejudice to refile if and

when the state court decisions became final.

After the magistrate judge had issued his (first) Report & Recommendation

I, WBGI submitted a second motion to dismiss, and the individual defendants

similarly filed a motion to dismiss. In these motions, the defendants presented

evidence that the Nevada Decision I was final; that the Intermediate Court of

Appeals of Hawaii had reversed the First Hawaii Decision I on the quantum

meruit claim but had affirmed the decision in all other respects; and that the

Hawaii Supreme Court had denied a petition for a writ of certiorari for the Second

Hawaii Decision I, which was affirmed by the Intermediate Court of Appeals of Hawaii.

As a result, the parties argued that the state law decisions were, for the most part, final and that, therefore, Mr. Wagner's defamation claims relating to his poor record-keeping and misappropriation of funds should be dismissed, and the court should stay the remaining defamation claim concerning the 2004 promissory note until there was a final decision in the First Hawaii Decision I proceedings. The magistrate judge agreed with these arguments in his Report & Recommendation II.

Mr. Wagner then filed with the district court objections to both Reports & Recommendations. With respect to Report & Recommendation I, regarding the question of the preclusive effect of the Nevada Decisions, the district court held that, in reaching its ultimate decision as to which of two competing boards of directors should control WBGI, the "Nevada court resolved a number of related factual and legal issues, including whether Mr. Wagner misappropriated funds, whether he kept proper records, and whether his removal from the board of directors was proper. Mr. Wagner had ample opportunity to argue these issues during the Nevada litigation and is now barred from asking this court to reconsider factual matters that the Nevada court has already addressed." Mem. Dec. & Order at 3. The court therefore concluded that Mr. Wagner's claims of

-8-

defamation relating to alleged poor record-keeping and misappropriation of funds should be dismissed.

The district court also rejected Mr. Wagner's contention that he did not have a full and fair opportunity to litigate the issues (regarding claims of Mr. Wagner's misappropriation and conversion of funds) addressed by the Second Hawaii Decisions. The court similarly rejected his challenge to the conclusion that he lacked standing to bring his fraud, waste and mismanagement claims against WBGI. On this latter point, the district court remarked that Mr. Wagner was, in essence, "asking a federal court to question the sufficiency of a state court proceeding for reasons wholly unrelated to any federal law." Id. at 4. The court "decline[d] Mr. Wagner's invitation" to engage in such questioning.

Mr. Wagner's objections to the magistrate judge's Report & Recommendation II fared no better. The court rejected Mr. Wagner's argument that the magistrate judge had "failed to consider a number of affidavits that Mr. Wagner submitted in support of his contention that the Nevada and Hawaii state court decisions were fraudulently obtained." Id. The court stated that it would "not overturn a state court decision on the grounds that Mr. Wagner suggests, no matter how many affidavits he submits" because Mr. Wagner needed first to "challenge those decisions using procedures outlined by state law." Id. at 5.

The district court also rejected Mr. Wagner's argument that the Hawaii courts had resolved his claims in the First Hawaii Decision in his favor: "It is clear that the Court of Appeals took no issue with the First Hawaii court's finding that the 2004 promissory note was fraudulent. In any event, the appellate court did not resolve Mr. Wagner's claims in his favor, since even Mr. Wagner's quantum meruit claim faces a number of hurdles on remand." Id. Finally, the district court rejected Mr. Wagner's claim that he should be allowed to proceed with the "part of his defamation action that concerns an indictment against him that the Defendants allegedly published on the WBGI website," finding his claim "to be nothing more than an assertion that the Defendants published a document available in the public record." Id. at 6.

The district court accordingly adopted all of the magistrate judge's recommendations contained in his Report & Recommendation II "except for one. The court sees no reason to stay the case until resolution of the First Hawaii decision because the court finds ample reasons to dismiss the case immediately." Id. Concluding that the any of Mr. Wagner's claims based on the 2004 promissory note had been addressed adversely to him by the Second Hawaii Decisions, the district court "dismisse[d] all of Mr. Wagner's claims on the grounds that they have been previously litigated." Id. Indeed, the district court found:

-10-

a <u>myriad of other reasons . . . to dismiss this case</u>. If the court
determined that issue preclusion did not bar Mr. Wagner's causes of
action, the court would nevertheless issue an Order to Show Cause
why the case should not be dismissed for failure to comply with Rule
11(b) of the Federal Rules of Civil Procedure. <u>The court is
convinced that this case has been filed for the purpose of harassing
the Defendants. The Second Hawaii court labeled Mr. Wagner a
vexatious litigant for commencing at least five civil actions that were
determined adversely to him, as well as for filing in bad faith
numerous frivolous motions that were intended for the sole purpose
of causing unnecessary delay. The number of instances of Mr.
Wagner's fraudulent conduct, false representations, and unauthorized
actions listed by both the Second Hawaii court and the Nevada court
are too legion to list here.</u> As one example, Mr. Wagner was able to
obtain a default judgment against WBGI without its knowledge by
telling the Second Hawaii court that WBGI did not have any officers
or directors and that WBGI did not object to the default being taken.
<u>Given this background, it is highly unlikely that Mr. Wagner's
current suit was brought in good faith. It is also doubtful that Mr.
Wagner's Complaint satisfies the pleading standards required by
Rule 8 of the Federal Rules of Civil Procedure. It is even doubtful
that the court has jurisdiction to hear this matter, as Mr. Wagner
presents no federal question and bases his claim to diversity
jurisdiction on unsupported assertions that the amount in controversy
is over $75,000. All of these observations support the court's
decision to dismiss this case.</u>

<u>Id.</u> at 6-7 (emphasis added, citation omitted). The district court accordingly

dismissed all of Mr. Wagner's claims. We agree whole-heartedly with that

determination.

The magistrate judge's two Reports & Recommendations in this convoluted

proceeding were lengthy, detailed and thorough. The district court's decision

adopting, for the most part, those reports was equally thorough and persuasive.

We cannot improve on that court's careful explanation as to why Mr. Wagner's

-11-

claims fail and the defendants' motions to dismiss must be granted. We therefore affirm the district court's dismissal of this appeal, for substantially the reasons contained in its decision.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting the individual defendants' motion to dismiss and dismissing all of Mr. Wagner's claims. This matter is terminated as it relates to those individual defendants. The abatement of that portion of the appeal concerning WBGI shall continue. Within 30 days of the date of this Order and Judgment, Mr. Wagner shall file a written report regarding the status of the bankruptcy proceedings and the application of the automatic stay. The failure to file that report in a timely fashion shall result in the dismissal of the appeal as it relates to WBGI without further notice. See 10th Cir. R. 42.1.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge